IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN D. MURPHY, | : | |
|   *Individually and on behalf of other* | : | |
|   *similarly situated current and former* | : | |
|   *homeowners in Pennsylvania* | : | |
| | : | CIVIL ACTION |
|             v. | : | |
| | : | NO. 13-5719 |
| BANK OF AMERICA, N.A., ET AL. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                   **MARCH  14 , 2016**

      Presently before the Court is the Motion of Defendants Bank of America, N.A. and the Bank of New York Mellon, N.A., to Dismiss Plaintiff's Amended Complaint (ECF No. 129), and the Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6) of Defendants McCabe Weisberg & Conway, P.C., Terrence J. McCabe, Marc S. Weisberg, and Edward D. Conway (ECF No. 130).  For the following reasons, the Motion of Defendants McCabe Weisberg & Conway, P.C., Terrence J. McCabe, Marc S. Weisberg, and Edward D. Conway will be granted, and the Motion of Defendants Bank of America, N.A. and the Bank of New York Mellon, N.A. will be granted in part and denied in part.

**I.     BACKGROUND**

    **A.     Factual Background[1]**

      Plaintiff's claims arise from a loan that he obtained from Countrywide Home Loans, Inc. ("Countrywide") in 2006.  (Am. Compl. ¶ 13, ECF No. 108.)  Plaintiff secured his $53,200 loan obligation with a mortgage (the "mortgage") naming Countrywide as the mortgagee.  (Mortgage,

---

[1] For purposes of these Motions, the factual allegations in the Complaint are taken to be true.  *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989).

Am. Compl. Ex. A.)  Plaintiff's mortgage and note were purportedly assigned to The Bank of New York Mellon ("BNY Mellon"), with Countrywide retaining loan servicing rights.  (Am. Compl. ¶¶ 15-16, 19.)

Defendant McCabe, Weisberg & Conway, P.C. ("MWC") filed a foreclosure action on BNY Mellon's behalf on September 28, 2007, asserting that Plaintiff was in default and owed a total of $59,536.46.  (*Id.* ¶ 34.)  The foreclosure complaint included $2,653.13 in attorneys' fees as part of the "amounts [] due on the mortgage."  (*Id.* ¶ 34 & Ex. E.)  A default judgment was entered against Plaintiff in the amount of $60,387.42, plus costs and interests on November 9, 2007.  (Am. Compl. ¶ 37.)  In addition, a writ of execution was issued and a sheriff's sale was scheduled but never occurred.  (*Id.*)  On or about November 4, 2008, Countrywide Home Loans Servicing LP sent what was purported to be an Act 91 Notice to Plaintiff.  (*Id.* ¶ 38 & Ex. F.)  MWC filed a praecipe to vacate the default judgment on August 17, 2012.  (2007 Foreclosure Docket Sheet, ECF No. 146 Ex. A.)

Before withdrawing its first action, BNY Mellon, through its agent MWC, filed a second foreclosure complaint against Plaintiff, which was verified by Bank of America, N.A. ("BOA") as successor to Countrywide Home Loans Servicing LP.  (Am. Compl. ¶¶ 43-44.)  The second foreclosure complaint demanded $102,157.77, and included $1,450 in attorneys' fees, which Plaintiff claims were improper.  (*Id.* ¶¶ 45-48.)  Plaintiff does not allege that he paid these fees, but that the fees have been "liened" against his property and his account balance "reflects paid (or liened) and unpaid foreclosure related fees and legal expenses."  (*Id.* ¶¶ 49-50.)

### B. Procedural History

On September 30, 2013, Plaintiff Brian D. Murphy filed a Complaint on behalf of himself and similarly situated Pennsylvania homeowners against Defendants BOA; BNY

2

Mellon; MWC; Terrance J. McCabe; Marc S. Weisberg; Edward D. Conway; QBE Insurance Corporation; and QBE First Insurance Agency. (First Compl. ¶¶ 3-11, ECF No. 1.) Defendants filed motions to dismiss the complaint. (ECF Nos. 40-42.) The QBE Defendants also filed a Motion to Sever the force-placed insurance claims. (ECF No. 39.) Plaintiff subsequently filed a Notice of Dismissal that dismissed with prejudice all force-placed insurance claims and removed the QBE Defendants from this litigation. (ECF No. 87.) Since the QBE Defendants were no longer in this action, their Motion to Sever and Motion to Dismiss (ECF No. 40) were dismissed as moot. (ECF No. 88.) The remaining motions to dismiss were denied without prejudice so that Plaintiff could file an amended complaint. (ECF No. 91.)

Plaintiff filed an Amended Class Action Complaint on January 20, 2015. (Am. Compl.) On March 2, 2015, upon joint motion of the parties (ECF No. 114), we stayed the matter pending the Third Circuit's decision in *Kaymark v. Bank of America*, 783 F.3d 168 (3d Cir. 2015) (ECF No. 115). On July 10, 2015, the stay was lifted. (ECF No. 126.)[2] On August 10, 2015, BOA and BNY Mellon (collectively "the Bank Defendants") filed the instant Motion to Dismiss Plaintiff's Amended Complaint (Bank Defs.' Mot.) and Defendants MWC, Terrence J. McCabe, Marc S. Weisberg, and Edward D. Conway filed the instant Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6) (MWC Mot.). Plaintiff filed an Opposition to the MWC Defendants' Motion to Dismiss (ECF No. 133) and an Opposition to the Bank Defendants' Motion to Dismiss Amended Complaint (Pl.'s Bank Resp., ECF No. 134) on September 14, 2015. On September 29. 2015, the MWC Defendants filed a Reply Brief in Further Support of the Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule

---

[2] At some point Defendant MWC filed a Motion for Centralization with the Judicial Panel on Multidistrict Litigation seeking to consolidate this and other similar cases. The motion was later withdrawn. (ECF No. 154.)

12(b)(6).  (MWC Reply, ECF No. 140.)  On October 2, 2015, the Bank Defendants filed a Reply Brief in Response to Plaintiff's Opposition to Defendants' Motion to Dismiss.  (Bank Defs.' Reply, ECF No. 141.)  Plaintiff filed a Sur-Reply to the Bank Defendants' Reply in Response to Mr. Murphy's Opposition to its Motion to Dismiss on October 6, 2015.  (ECF No. 144.)  On December 17, 2015, Plaintiff filed a Substituted Opposition to the MWC Defendants' Motion to Dismiss.  (Pl.'s MWC Resp., ECF No. 146.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  A motion under Rule 12(b)(6), therefore, tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."  *Iqbal*, 556 U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*. at 679.  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id*. at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

### III. DISCUSSION

The gravamen of Plaintiff's Amended Complaint is that Defendants charged Plaintiff and others for illegal foreclosure-related attorneys' fees and unauthorized insurance premiums in violation of state and federal law. In Count I of the Amended Complaint, Plaintiff asserts a breach of contract claim, alleging that the Bank Defendants charged foreclosure fees in violation of the mortgage contracts in which they entered. (Am. Compl. ¶¶ 62-69.) Counts II and III allege that the Bank Defendants and MWC collected prohibited foreclosure-related attorneys' fees and costs in violation of the Loan Interest and Protection Law, 41 Pa. Cons. Stat. §§ 101 *et seq.* ("Act 6"), and the Homeowner's Emergency Mortgage Assistance Act of 1983, 35 Pa. Cons. Stat. §§ 1680.401c *et seq.* ("Act 91"). (*Id.* ¶¶ 70-86.) In Count IV, Plaintiff asserts a claim against the Bank Defendants and MWC for violations of the Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §§ 201-9.2, by placing inflated liens on mortgaged

properties.  (*Id.* ¶¶ 87-91.)  Count V alleges that MWC violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, for demanding and collecting fees and costs that were not authorized by the respective mortgages and prohibited by Act 6.  (*Id.* ¶¶ 92-100.)  In Count VI, Plaintiff brings a claim against Terrence J. McCabe, Marc S. Weisberg, and Edward D. Conway (the "MWC Partners") under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), for conducting an illegal fee collection scheme for attorney services.[3]

### A.  Breach of Contract (Count I)

Plaintiff alleges that the Bank Defendants breached their standardized mortgage contracts when they charged flat rate attorneys' fees of $1,145, because such amount did not reflect charges for legal services that were actually performed.[4]  (Am. Compl. ¶ 68.)  Defendants contend that Plaintiff's claim cannot proceed because his asserted damages are speculative and his claim fails to recognize the undisputed fact that there were attorneys' fees associated with the two foreclosure complaints filed against him.  (Bank Defs.' Mot. 6-7.)

"To allege breach of contract in Pennsylvania, a plaintiff must show '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3)

---

[3] Plaintiff brings all claims on behalf of himself and all other similarly situated homeowners with property located in Pennsylvania. (Am. Compl. ¶ 3.)  Since Plaintiff is the sole identified party at this stage, we will analyze his claims here as they pertain only to him. *See Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 801 (E.D. Pa. 2007) ("[D]amages suffered by a potential class member are not relevant at [the motion to dismiss] stage; only damages suffered by Plaintiffs themselves are relevant.").

[4] It is unclear as to which foreclosure action Plaintiff is referring in asserting the $1,145 flat fee figure; this amount does not match either of the amounts demanded for attorneys' fees in the 2007 or 2012 foreclosure actions, as referenced in the Factual Background section of the Amended Complaint.  (*See* Am. Compl. ¶¶ 34, 45.)  Because Plaintiff refers to the default judgment throughout his argument here, we will assume that he is making reference to the 2007 Foreclosure Action.

resultant damages.'"[5] *Kaymark*, 783 F.3d at 182 (quoting *Omicron Sys., Inc. v. Weiner,* 860 A.2d 554, 564 (Pa. Super. Ct. 2004)). "[B]reach of contract damages must be damages that actually resulted from the defendant's breach." *Dicicco v. Citizens Fin. Grp., Inc.*, No. 15-267, 2015 WL 5302767, at *9 (E.D. Pa. Sept. 10, 2015) (citing *Kaymark,* 783 F.3d at 182).

The Bank Defendants rely heavily on *Kaymark* to support their position that Plaintiff has not alleged any damages to support a breach of contract claim. In *Kaymark*, the defaulting plaintiff alleged that BOA breached its mortgage contract when it listed certain not-yet-incurred fees as due and owing in the body of its foreclosure complaint. *Kaymark,* 783 F.3d at 171-72. As is the case here, the terms of the mortgage contract allowed fees for services "*performed in connection with* [the] Borrower's default." *Id.* at 172 (emphasis in original). The Third Circuit affirmed the dismissal of the breach of contract claim because the plaintiff had not actually paid the disputed fees or expenses and thus, could not cite them as resultant damages. *Id.* at 183.

Plaintiff argues that *Kaymark* can be distinguished from the instant case because the lien on his property was reduced to a sum certain default judgment that included inflated charges for unperformed attorneys' services. (Pl.'s Bank Resp. 3.) He further contends that, even without a pleading of actual damages, his breach of contract claim must survive, because he has asserted a claim for nominal damages. (*Id.* at 13.)

As noted above, damages must be a direct result of a defendant's breach. Because the Amended Complaint does not allege that Plaintiff could have or would have saved his mortgage from foreclosure absent Defendants' attorney flat fee charges, we cannot conclude that any inflated default judgment entered against Plaintiff resulted from Defendants' breach of the mortgage contract terms. *See Dicicco*, 2015 WL 5302767, at *9 (concluding that plaintiffs'

---

[5] The parties do not dispute that Pennsylvania law governs Plaintiff's breach of contract claim.

damages were not caused by a bank's inflated interest charges, because plaintiffs could not demonstrate that the interest charges caused the foreclosure actions). We therefore reject Plaintiff's theory that the default judgment satisfies the "resultant damages" prong of his breach of contract claim.

Under Pennsylvania law, however, "if a party is able to prove breach of contract but can show no damages flowing from the breach, the party is entitled to recover nominal damages." *Haywood v. Univ. of Pittsburgh*, 976 F. Supp. 2d 606, 645 (W.D. Pa. 2013) (citing *Thorsen v. Iron and Glass Bank,* 476 A.2d 928, 931 (Pa. Super. Ct. 1984)). Count I of Plaintiff's Amended Complaint does include a claim for nominal damages. (Am. Compl. ¶ 69.) Therefore, his breach of contract claim cannot be dismissed for failing to assert required damages.[6] [7]

---

[6] Defendants contend that nominal damages are available only where actual damages can be presumed but are not ascertainable. Even though nominal damages may be an appropriate award in such a situation, we find that they can be applied more broadly to encompass situations in which a breach has occurred but no actual injury has been suffered. *See, e.g., Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 497 (3d Cir. 2015) ("Under Pennsylvania law, if a plaintiff is able to prove a breach of contract but can show no damages flowing from the breach, the plaintiff is nonetheless entitled to recover nominal damages . . . . [E]ven without compensatory damages, a [party] can be liable for nominal damages for violating its contractual duty of good faith."); *Gaetano v. Bayer, Inc.*, No. 04-1812, 2007 WL 3334985, at *14 (W.D. Pa. Nov. 8, 2007) ("[U]nder Pennsylvania law, a plaintiff who can establish a breach but can show no damages flowing from the breach is entitled to recover nominal damages."); *Greenlee v. W.*, 71 Pa. Super. 468, 472 (Pa. Super. Ct. 1919) ("Mere proof of the breach of a legal obligation will not warrant a recovery in more than nominal damages."); *Mechensky v. Com., Pennsylvania Human Relations Comm'n*, 578 A.2d 589, 596 (Pa. Commw. Ct. 1990) ("Nominal damages are appropriately awarded where a breach of contract has been proven, but no damage has been shown to flow from the breach."); *see also* Restatement (Second) of Contracts § 346(2) (1981) ("If the breach caused no loss . . . a small sum fixed without regard to the amount of loss will be awarded as nominal damages.").

[7] Since we have concluded that a claim for nominal damages satisfies the third prong of his breach of contract claim, we need not address Plaintiff's contention that specific performance and/or restitutionary damages may also satisfy the damages requirement.

The Bank Defendants contend that even if Plaintiff has pleaded the required damages, Count I must be dismissed because Plaintiff cannot support his allegation that any of the contractual mortgage terms were breached. (Bank Defs.' Mot. 6.) They assert that Plaintiff has not sufficiently pleaded that the charged attorneys' fees were "unincurred" or "unauthorized." (*Id.*) In *Kaymark*, the court concluded that under the most natural reading of the contract, the demanded fees were not expressly authorized by the mortgage or permitted by law. 783 F.3d at 175-76 (reasoning that the plaintiff "agreed to pay attorneys' fees and other expenses that were actually incurred in connection with the default, not fees that might eventually be incurred").

Here, the contractual terms of Plaintiff's mortgage are nearly identical to those at issue in *Kaymark*. Plaintiff alleges that Defendants' attempt to collect flat rate attorneys' fees breached the contractual terms of the mortgage agreement because the billed amount represents fees for unperformed legal services. That Defendants utilized some legal services in connection with the foreclosure action is of no consequence in ruling upon this motion to dismiss—Defendants do not assert that a total of $1,145 was actually incurred for legal services. Further discovery may demonstrate that the $1,145 fee for legal services was neither reasonable, nor representative of services actually performed. *See EMC Mortg., LLC v. Biddle*, 114 A.3d 1057, 1069 (Pa. Super. Ct. 2015) ("[Defendant] must come forward with [] proof to justify its claim for attorneys' fees."). The Bank Defendants' Motion to Dismiss Count I of the Amended Complaint will be denied.

### B.     Act 6 and Act 91 Violations (Counts II and III)

In Count II of the Amended Complaint, Plaintiff alleges that the Bank Defendants and MWC violated Act 6 § 406 by improperly collecting foreclosure-related attorneys' fees and that

he is entitled to damages under Act 6 § 504.[8]  (Am. Compl. ¶¶ 75-77, 84.)  In Count III, Plaintiff asserts a claim against the Bank Defendants and MWC for violating Act 6 and/or Act 91 by not providing a proper pre-foreclosure notice.  (*Id.* at ¶¶ 85-86.)  Defendants contend, *inter alia*, that Plaintiff's mortgage is not the kind protected under Act 6 provisions and that Plaintiff is without remedy under Act 91.

### 1. Act 6 Does Not Apply to Plaintiff's Mortgage Loan

The Act 6 terms limiting attorneys' fees apply only to "residential mortgages."  41 Pa. Cons. Stat. § 406.  A residential mortgage is defined as "an obligation to pay a sum of money in an original bona fide principal amount of the base figure or less . . . ."  *Id.* at § 101.  Prior to September 8, 2008, the base figure was $50,000.  As of September 8, 2008, the legislature increased the base figure to $217,873.  Here, Plaintiff was granted a mortgage when he financed the principal amount of his home purchase in the amount of $53,200 in May 2006.  (Am. Compl. ¶ 13.)  Because the Pennsylvania General Assembly made no clear and manifest intention to make the 2008 Act 6 amendments retroactive, we must apply the definition of "residential mortgages" as it existed in 2006.  *See* 1 Pa. Stat. and Cons. Stat. Ann § 1926 ("No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly.").

In an attempt to advance his claim and circumvent the $50,000 statutory limitation, Plaintiff argues that the base figure provided in the 2008 amendments should be applied "prospectively" to his mortgage contract because it does not affect any substantive contractual right.  (Pl.'s Bank Resp. 21-22.)  We need not do an analysis of whether a change to the definition of "residential mortgage" under Act 6 is procedural or substantive to conclude that

---

[8] Plaintiff has withdrawn claims arising under Act 6 § 502 and contends only that claims under § 504 remain viable.  (Pl.s' Bank Resp. 18; Pl.'s MWC Resp. 25.)

Plaintiff does not have a valid Act 6 claim.  Here, Plaintiff was not covered by the fee limiting terms of Act 6 when he signed his mortgage agreement in 2006.  Because the legislature did not express a clear and manifest intent to have the 2008 base figure apply to mortgage contracts in existence prior to the amendments, we cannot apply the figure to Plaintiff's contract.  Accordingly, Plaintiff's loan is not a "residential mortgage" under Act 6, it is not subject to fee limitation provisions under Act 6, and Plaintiff cannot recover under Act 6.  *See Trunzo v. Citi Mortgage*, 43 F. Supp. 3d 517, 535 (W.D. Pa. 2014) ("Notwithstanding the 2008 amendment, courts have looked to the bona fide principal amount set at the time of the transaction, and not at a subsequent date, for considering whether a residential mortgage comes under Act 6."); *see also In re Harris-Pena,* 446 B.R. 178, 187 (Bankr. E.D. Pa. 2009) (noting the 2008 amendment to Act 6, but applying the pre-2008, $50,000 principal amount limit for loan that closed in 2001); *In re Grayboyes*, No. 05-178, 2006 WL 437546, at *7 (E.D. Pa. Feb. 22, 2006) *aff'd sub nom. In re Graboyes*, 223 F. App'x 112 (3d Cir. 2007) ("The principal amount of a loan must be measured at the time of the consummation of the transaction, rather than at subsequent dates . . . . This methodology comports with the statutory definition of 'residential mortgage,' which specifies the '*original* bona fide principal amount' of the mortgage." (emphasis in original)).[9]  Accordingly, Count II of Plaintiff's Amended Complaint will be dismissed.

---

[9] Plaintiff asserts that the court in *Biddle* "applied the strictures of Act 6 prospectively to a mortgage that would not have been covered prior to the 2008 amendment."  (Pl.'s Bank Resp. 21.)  At no place in the *Biddle* opinion does the court reference Act 6 or its requirements.  Instead, the court focuses on the evidentiary standard for determining pre- and post-judgment damages and the extent to which a foreclosure party can modify the amount of damages following a default judgment.  *Biddle*, 114 A.3d at 1064-72.  The remaining cases to which Plaintiff cites provide no further support for his claim.

## 2. *Plaintiff Has No Remedy under Act 91*

In Count III, Plaintiff alleges that the Bank Defendants and MWC charged unauthorized attorneys' fees and expenses prior to issuing proper pre-foreclosure notice as required by Act 6 and/or Act 91. (Am. Compl. ¶¶ 85-86.) In that Act 91 does not provide an individual monetary right of relief, it appears as if Plaintiff is seeking monetary damages by asserting an Act 91 claim through Act 6 § 504 provisions.[10] *See Salvati v. Deutsche Bank Nat. Trust Co.*, No. 12-0971, 2013 WL 1314777, at *5 (W.D. Pa. Mar. 28, 2013), *rev'd in part on other grounds*, 575 F. App'x 49 (3d Cir. 2014) ("[T]here is no private right of action under Act 91.").

"[B]oth Act 6 and Act 91 require that notice must be given before any legal action may be commenced to recover under a 'mortgage obligation.'" *Bennett v. Seave*, 554 A.2d 886, 891 (Pa. 1989). Act 6 grants "[a]ny person affected by a violation of *the act* . . . the substantive right to bring an action on behalf of himself individually for damages by reason of such conduct or violation, together with costs including reasonable attorney's fees and such other relief to which such person may be entitled under law." 41 Pa. Stat. Ann. § 504 (emphasis added). Even if Act 6 provided a vehicle for Plaintiff to collect monetary damages for an Act 91 violation, "the protections afforded by Act 6 and Act 91 are statutorily limited to security extended by the execution of a *residential mortgage*." *Bennett*, 554 A.2d at 892 (emphasis added). As we have discussed *supra*, Plaintiff's mortgage loan exceeded the base amount under which Plaintiff's mortgage could be considered "residential." Plaintiff has not made any factual allegations that would provide him with an individual right to relief under either Act 6 or Act 91. *See Wells Fargo Bank, N.A. v. Gilroy*, No. 1216-2014, 2015 WL 4680780, at *4 n.2 (Pa. Super. Ct. July 22,

---

[10] Plaintiff fails to cite the specific provision under which he seeks relief. Therefore, we are left to assume that he seeks relief under § 504 as he did in Count II of the Amended Complaint.

12

2015) ("When [the plaintiff] entered the mortgage in 1996, its principal amount of $59,900.00 exceeded $50,000.00, the limit then in effect.  Thus, [the defendant bank] was not required to send an Act 6 pre-foreclosure notice.").  Accordingly, Count III of Plaintiff's Amended Complaint will be dismissed.

        **C.**        **UTCPL Violations (Count IV)**

In Count IV of the Amended Complaint, Plaintiff alleges that the Bank Defendants and MWC violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") when they charged misrepresented attorneys' fees and placed an inflated lien reflecting such charges on Plaintiff's property.  Defendants contend that Plaintiff's claim fails a matter of law because, *inter alia*, he has not suffered an ascertainable loss.

"To maintain a private right of action under the UTPCPL, a plaintiff must demonstrate (1) 'ascertainable loss of money or property, real or personal,' (2) 'as a result of' the defendant's prohibited conduct under the statute."  *Kaymark,* 783 F.3d at 180 (quoting 73 Pa. Stat. Ann. § 201-9.2).  Plaintiff alleges that he suffered an ascertainable loss in the form of an inflated lien against his property.  In an apparent attempt to avoid the negative impact of the Third Circuit's *Kaymark* decision on his claim, Plaintiff again argues that because the lien on his property was reduced to a default judgment, he experienced a concrete and definite economic loss.  (Pl.'s Bank Opp. Br. 14-15.)  What Plaintiff fails to assert is any fact that would allow us to conclude that Plaintiff was actually "deprived of his property" or "paid the disputed fees alleged to have deprived him of his property," as required by the holding in *Kaymark*.  783 F.3d at 180.  In *Kaymark*, the court reasoned that a "temporary injury" without a "specific loss of money" is "too speculative" to be considered an ascertainable loss under the UTPCPL.  *Id.* at 181.  Here, the default judgment in the 2007 Foreclosure Action was voluntarily vacated by BNY Mellon on

August 17, 2012 (Pl.'s MWC Opp. Br. 3) and Plaintiff makes no allegations that he actually paid any fees or costs related to the judgment.  Moreover, Plaintiff is still living on the mortgaged property (Am. Compl. ¶ 3) and the 2012 Foreclosure Action remains pending (2012 Foreclosure Docket Sheet, ECF No. 129 Ex. A.).  Plaintiff has not pleaded an ascertainable loss.  Accordingly, Count IV of Plaintiff's Amended Complaint will be dismissed.

    D.  **FDCPA Violations (Count V)**

In Count V of his Amended Complaint, Plaintiff alleges that Defendant MWC violated the Fair Debt Collection Practices Act ("FDCPA") when it included unlawful attorneys' fees and costs in the foreclosure complaint brought against him.  Defendant MWC asserts that Plaintiff's claim is time-barred.

An action to enforce any liability under the FDCPA must be brought "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  "Where FDCPA claims are premised upon allegations of improper pursuit of debt collection litigation, courts are split as to when the FDCPA's one-year statute of limitations begins to run: some have held that such claims accrue upon filing the underlying collection action, while others use the date on which the purported debtor was served with the complaint."  *Schaffhauser v. Citibank (S.D.) N.A.*, 340 F. App'x 128, 130-31 (3d Cir. 2009) (internal citation omitted).  Here, the 2012 Foreclosure Action was filed on April 16, 2012.  (2012 Foreclosure Docket Sheet.)  Plaintiff's fiancé, Kelly Hobart, was served by a sheriff on April 19, 2012.  (*Id.*)  Plaintiff filed a response to the foreclosure complaint on April 25, 2012.  (*Id.*)  Plaintiff did not commence this action until September 30, 2013.  (*See* ECF No. 1.)  Even utilizing the date at which Plaintiff responded to the foreclosure complaint, he did not bring his FDCPA claim within the one-year statutory term.  Accordingly, Count V of Plaintiff's Amended Complaint will be dismissed.

E.     **RICO Violations (Count VI)**

In Count VI of his Amended Complaint, Plaintiff alleges that the MWC Partners violated the federal RICO statute when they committed mail and/or wire fraud in furtherance of Defendants' foreclosure overcharging and collection scheme. The MWC Partners contend that Plaintiff's claim must be dismissed because he has not asserted any actual damages resulting from the alleged racketeering activity. In addition, the MWC Partners assert that any RICO claims related to petitioning a state court are barred under the Noerr-Pennington doctrine.

To bring a civil RICO claim, a plaintiff must satisfy two statutory elements to confer standing: (1) that he suffered an injury to his business or property; and (2) that his injury was proximately caused by the defendant's violation of § 1962. *Macauley v. Estate of Nicholas*, 7 F. Supp. 3d 468, 479 (E.D. Pa. 2014) (citing 18 U.S.C. § 1964). "Injury to business or property requires 'a concrete financial loss and not mere injury to a valuable intangible property interest.'" *Id.* (citing *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000)). Because Plaintiff has not alleged an injury to his business or property, the Court finds that he does not have standing to pursue his RICO claims.

As we have discussed, Plaintiff's alleged injuries were fleeting and never materialized into an actual harm. Even assuming that the default judgment in the 2007 Foreclosure Action included illegal and unreasonable attorneys' fees, Plaintiff was never injured—the judgment was voluntarily vacated and Plaintiff suffered no tangible loss. Plaintiff does not assert that he paid any of the wrongful fees or that he was ejected from his property. The alleged injury here is exactly the kind of intangible property loss that does not give rise to a RICO claim. *See, e.g., Miller v. Pocono Ranch Lands Prop. Owners Ass'n Inc.,* 557 F. App'x 141, 145-46, (3d Cir. 2014) (concluding that a plaintiff could not establish injury or fraud where she knew that bills

sent to her were unwarranted and she had refused to make payment); *Maio v. Aetna, Inc.,* 221 F.3d at 483 ("[T]he injury to business or property element of section 1964(c) can be satisfied by allegations and proof of actual monetary loss, i.e., *an out-of-pocket loss.*" (emphasis added)); *Walter*, 480 F. Supp. 2d at 801 (reasoning that alleged injuries of unpaid contested debt and withdrawn lawsuits are not specific injuries that give rise to RICO liability).[11] [12]  Count VI of Plaintiff's Amended Complaint will be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, the Motion of Defendants McCabe Weisberg & Conway, P.C., Terrence J. McCabe, Marc S. Weisberg, and Edward D. Conway will be granted, and the Motion of Defendants Bank of America, N.A. and the Bank of New York Mellon, N.A. will be granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:

*/s/ C.S.H.*

_____
**R. BARCLAY SURRICK, J.**

---

[11] Plaintiff suggests that our conclusion here is incongruent with those in *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), *State Farm Mut. Auto. Ins. Co. v. Lincow*, 715 F. Supp. 2d 617, 632 (E.D. Pa. 2010), and *Stoneback v. ArtsQuest*, No. 12-03287, 2013 WL 3090714 (E.D. Pa. June 20, 2013). We find nothing in those opinions standing for the proposition that unpaid and unauthorized attorneys' fees give rise to a legally cognizable harm under the RICO statute. In *Bridge*, the respondents asserted a tangible harm because they actually lost their right to purchase more tax liens due to the petitioner's fraudulent scheme. 553 U.S. at 645. In *Lincow*, 715 F. Supp. 2d at 624-25, and *Stoneback*, 2013 WL 3090714, at *15, the plaintiffs alleged that they actually made payment for a fraudulent good or service. Plaintiff's factual allegations are incongruent with the above cases.

[12] Since Plaintiff has not made factual allegations to satisfy the first element of his RICO claim, we need not conduct an analysis under the Noerr-Pennington doctrine.